# EXHIBIT B

| | |
|---|---|
| DISTRICT COURT, WELD COUNTY, STATE OF COLORADO<br>901 9th Avenue, Greeley, CO 80631 | |
| COLLEEN SUPAN,<br>Plaintiff,<br><br>v.<br><br>SFM, LLC, d/b/a/ SPROUTS FARMERS MARKET,<br>Defendant. | Δ COURT USE ONLY Δ |
| Plaintiff's Attorney:<br>Kelli Riley, Esq., #44828<br>Riley Law LLC<br>2017 9th Street<br>Greeley, CO 80631<br>Phone Number: (970) 515-5932<br>Fax Number: (970) 797-1226<br>Kelli@rileylawllc.com | Case Number:<br><br><br><br><br><br>Division:<br>Courtroom: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Colleen Supan, by and through her counsel, Kelli Riley of Riley Law LLC, hereby files this Complaint and Jury Demand against Defendant, SFM, LLC, d/b/a Sprouts Farmers Market, and in support thereof, Plaintiff states as follows:

## I.   INTRODUCTION

1. This is an employment discrimination case. Plaintiff Supan is an openly gay woman who does not conform to traditional gender-based stereotypes. Ms. Supan was hired by Defendant, Sprouts Farmers Market, as a Deli Clerk in June 2016. Several months into her employment, Ms. Supan's direct supervisor, Deli Manager Karen Call began harassing Ms. Supan because of her sex and her sexual orientation. Ms. Supan complained about the sexually hostile work environment, but management failed to take appropriate steps to address the discrimination. After her complaint, Ms. Supan was subjected to a campaign of retaliation which culminated in her constructive discharge on or about May 9, 2017. Plaintiff brings claims for sex discrimination, a sexually hostile work environment, and retaliation in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and for sexual orientation discrimination, a sexually hostile work environment, and retaliation in violation of the Colorado Anti-Discrimination Act, as amended, C.R.S. §§ 24-34-301, *et seq.* ("CADA").

## II.  PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Colleen Supan is and was a resident of the State of Colorado, and performed work for Defendant at Sprouts' Store 308, located at 47th Avenue & Highway 34, Greeley, Colorado, in Weld County, Colorado, at all relevant times.

3. Plaintiff has exhausted all administrative prerequisites to the filing of this action.

4. Defendant SFM, LLC, d/b/a Sprouts Farmers Market ("Sprouts"), is and was at all relevant times a Delaware limited liability company licensed to and doing business in the State of Colorado. Its principal offices are located at 5455 E. High Street, Suite 111, Phoenix, Arizona 85054.

5. At all relevant times, Defendant Sprouts was an "employer" within the meaning of Title VII and CADA.

6. This Court has jurisdiction over this matter pursuant to COLO. REV. STAT. §§ 13-1-124(1).

7. Venue is proper in this Court pursuant to Colo. R. Civ. P. 98(c) because Defendant is a company doing business in Weld County, Colorado, and all of the events complained of herein occurred in Weld County, Colorado.

## III.  FACTUAL ALLEGATIONS

8. Ms. Supan was hired by Defendant Sprouts as a Deli Clerk for its Greeley store location on or about June 4, 2016.

9. In that position, Ms. Supan began reporting to Deli Manager Karen Call after her first week.

10. Ms. Supan is a lesbian. She is open about her sexual orientation and did nothing to hide her status as a lesbian when she began working for Defendant Sprouts.

11. Ms. Supan does not conform to traditional gender-based stereotypes in her manner of dress, her physical appearance, or in her mannerisms. For example, Ms. Supan does not often wear make-up and she does not present herself in a stereotypically feminine way. Ms.

2

Supan has a low voice and always wore her hair pulled back. She dressed simply in jeans and tshirts.

12. In the first month or two of Ms. Supan's employment, Call learned that Ms. Supan was a lesbian. Ms. Supan mentioned her girlfriend in casual conversation.

13. Ms. Supan was the only openly lesbian employee at Defendant Sprouts' Greeley store location during her tenure.

14. Beginning in August 2016, Call repeatedly asked Ms. Supan unwelcome and invasive questions about her sexual orientation and about her sex life when the two were working at the same time. For example, Call asked Ms. Supan questions along the lines, "How does it feel to be gay?" "How did your family feel about you being gay?" "How many boyfriends have you had?" and "Have you ever had sex with a man?"

15. Ms. Supan was very uncomfortable with Call's questions. Because she was a new employee and Call was her direct supervisor, Ms. Supan was not sure how to respond without risking her job. She initially tried to dissuade Call from further inappropriate inquiries by giving a brief answer and quickly changing the subject.

16. Meanwhile, Ms. Supan worked very hard to prove herself as a valuable and good employee. Her hard work paid off when, a few months later, in December 2016, Defendant's Store Manager Brent Parker promoted Ms. Supan to Senior Deli Clerk. Ms. Supan received a pay raise along with that promotion, which became effective in January 2017.

17. Unfortunately, Ms. Supan lost her housing when she and her girlfriend broke up shortly after Ms. Supan was promoted.

18. Call told Ms. Supan that she had a room in her basement that was available for and offered Ms. Supan the opportunity to rent the space at a very reasonable rate. Ms. Supan was grateful for the offer and told Call she was glad to accept it.

19. Unfortunately, Call continued to make inappropriate remarks about Ms. Supan's sexual orientation. For example, immediately after Ms. Supan had moved into Call's basement, Call remarked to Ms. Supan that she thought lesbians were "gross" and "disgusting." On other occasions, Call told Ms. Supan about Call's gay nephew and how Call thought he was "overly feminine" and "disgusting" because all he talked about was "gay sex all the time," frequently ruining family meals by talking about his boyfriend.

20. Ms. Supan was offended and very uncomfortable by Call's remarks, and it was clear to Ms. Supan that she had made a mistake by accepting Call's offer to move into Call's basement. Ms. Supan resolved to avoid spending time with Call to the extent possible and to move out as quickly as possible.

3

21. At work, Call continued to make inappropriate and offensive remarks and engage in inappropriate behaviors of a sexual nature. For example, Call made a point to tell Ms. Supan that she thought certain of her female co-workers looked "pretty" because they were wearing make-up (which Ms. Supan did not often do) or because their pants complemented their feminine figures. Ms. Supan does not have a stereotypically feminine figure. Call opined on what size pants they were wearing and occasionally slapped their butts, apparently to draw attention to their attractive appearance and, by contrast, to express her disapproval of Ms. Supan's appearance and gender non-conformity.

22. In addition, Call openly opined about the sex lives of Ms. Supan's co-workers. For example, on one occasion, Call asked Ms. Supan if she thought her co-worker, Shae McCowen, was having sex with her boyfriend and what Ms. Supan imagined Ms. McCowen would be wearing in the bedroom for the special evening Ms. McCowen had planned with him. Ms. Supan found these remarks offensive and inappropriate, and tried to avoid Call when they were on a shift together to avoid being subjected to these kinds of remarks.

23. Around this time frame, in January 2017, Call began treating Ms. Supan differently and worse than her co-workers who were not lesbians and/or who conformed to stereotypically female gender norms in their dress and mannerisms. For example, Call began scheduling Ms. Supan to work the least desirable shifts available in the Deli department; frequent closing shifts followed by split shifts and/or occasional 4:00 a.m. morning shifts.

24. The closing shift in the Deli Department is very physically demanding. In addition to cleaning the deli cases and the slicing machines, the closing clerk must also clean the rotisserie oven, which has been operating since early morning by closing time. This means that grease, fat, and small pieces of chicken meat and skin will have collected at the bottom of the oven and will have cooked into a thick, hardened and caramelized layer that the deli clerk who has the closing shift must manually remove. It takes one employee about two hours to clean the rotisserie oven, and it is physically demanding work that leaves the employees who are responsible for cleaning it sore for days afterwards.

25. Call, who was responsible for making the work schedules for the Deli employees, began scheduling Ms. Supan for back-to-back closing shifts in which she worked from 2:00 p.m. to 11:00 p.m., and during which she was required to clean the rotisserie oven. Ms. Supan complained to Call that she could not continue working these grueling shifts back-to-back because they were so physically taxing. Call only made Ms. Supan's schedule more grueling in response to her complaint. For example, Call began scheduling Ms. Supan for the closing shift frequently followed by split shifts. In other words, Ms. Supan was required to close (cleaning the rotisserie oven), and then return at an early hour the following day to work for four hours, go home for a short break, and then return to work for four more hours to close (cleaning the rotisserie oven) again in the evening. Ms. Supan's similarly situated counterparts who were not

lesbians and who were more gender-conforming than Ms. Supan received better shifts and fewer closing shifts.

26. Ms. Supan repeatedly complained to Call that she could not continue working these shifts because it was physically taxing. Toward the end of April 2017, Ms. Supan's shoulder had become so swollen and sore she could barely move it. In response to her complaints, however, Call remarked, "you're a big, strong lady, you can take it," and "if you work harder, I'll give you better hours," or "I guess my body just works differently than yours."

27. Upon information and belief, at least one other employee also complained to management on Ms. Supan's behalf about the discriminatory treatment to which Ms. Supan was being subjected, to no avail.

28. Upon information and belief, Call has singled out other individuals she perceived as gender non-conforming because of those characteristics, holding them to different and worse standards compared to their similarly situated gender-conforming counterparts.

29. Upon information and belief, Call has also exhibited bias against individuals because of their race, calling one African American employee the "little black girl" and used the "N" word as well as generally exhibiting discriminatory animus against groups of people based on discriminatory stereotypes. For instance, Call has made remarks along the lines that African American men are dangerous and lazy, and that Mexicans are just trying to scam people out of money, and Mexican women have too many children. Upon information and belief, Defendant Sprouts was aware of Call's discriminatory animus but failed to take appropriate steps to address it, effectively condoning and ratifying these behaviors.

30. Having gotten no relief after repeated complaints to Call, Ms. Supan escalated her complaints to Store Manager Cassandra Kelman. In response to her complaints, Kelman advised Ms. Supan that she could transfer to a lead cashier position that was available and would have been a promotion with a raise, and a position that did not report to Call. However, when Ms. Supan later followed up to request the transfer, she was informed that Call had gone to the manager to block Plaintiff from getting the position.

31. Ms. Supan next raised her concerns about the differential treatment to Store Manager Brent Parker, who simply responded along the lines that "[w]e take our best [like Ms. Supan] and spit them out." Parker did nothing to address or investigate Ms. Supan's complaints, either.

32. The morning after Ms. Supan had complained to Parker, Call confronted Ms. Supan at work. She got up close to Ms. Supan's face and said in a threatening tone, "[s]omeone complained about me, and I want to know who it was."

5

33. Ms. Supan admitted that she had complained. Call immediately retaliated, cutting Ms. Supan's hours dramatically which, in turn, negatively impacted Ms. Supan's compensation.

34. When she was scheduled to work, Ms. Supan was scheduled to close and had to clean the rotisserie oven, despite having a badly injured shoulder.

35. On or about May 4, 2017, Ms. Supan complained to Call and to manager Kelman that she had injured her shoulder cleaning the rotisserie oven. Ms. Supan explained that she could not lift her arm or use it to slice deli meats, and that she needed to see a doctor. Call persisted in her discriminatory and retaliatory treatment of Ms. Supan. Rather than send her to the doctor or sending her home, Call callously responded that Ms. Supan should "use [her] left arm" instead.

36. Ms. Supan asked Kelman to provide her with the information she needed to file a worker's compensation claim, but Kelman responded that someone was using the computer she needed to start the claim. Hours passed with no follow up from Kelman, making it clear to Ms. Supan that her only options were to continue being subjected to the sexually hostile and retaliatory work environment which would result in additional physical injuries or to constructively terminate her employment and obtain medical treatment on her own.

37. Having no other reasonable choice under the circumstances, Ms. Supan constructively terminated her employment on or about May 4, 2017.

## IV. CLAIMS FOR RELIEF

### First Claim for Relief
### Sex Discrimination (Sex Stereotyping) in Violation of Title VII

38. Plaintiff Supan hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

39. Ms. Supan, as a woman, is a member of the class of persons protected from sex discrimination under Title VII.

40. Ms. Supan, as a woman who does not conform to the gender stereotypes linked to her sex, is protected from sex stereotyping discrimination under Title VII.

41. At all relevant times, Plaintiff performed the functions of her job competently and was qualified for her position with Defendant.

42. Ms. Supan was subjected to workplace injuries and ultimately, Defendant constructively terminated Ms. Supan's employment, because of her sex and/or her failure to conform to gender stereotypes linked to her sex.

43. Ms. Supan's sex and/or her gender non-conformity were the motivating factors in Defendant's conduct causing her physical injuries and in its constructive termination of Ms. Supan's employment.

44. Defendant is liable for the acts and omissions of its agents and employees. Defendant Sprouts, by and through its agents, discriminated against Ms. Supan on the basis of her sex and/or her failure to conform to gender stereotypes linked to her sex.

45. As a result of Defendant's conduct, Ms. Supan has suffered significant injuries, damages, and losses.

46. Defendant's conduct was engaged in with malice or with reckless indifference to Ms. Supan's federally-protected rights within the meaning of Title VII.

### SECOND CLAIM FOR RELIEF
### Sex Discrimination (Sexual Orientation) in Violation of CADA

47. Plaintiff Supan hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

48. Ms. Supan, as a gay woman, is a member of the class of persons protected from sexual orientation discrimination under CADA.

49. At all relevant times, Ms. Supan performed the functions of her job competently and was qualified for her position with Defendant.

50. Ms. Supan was subjected to workplace injuries and ultimately, Defendant constructively terminated Ms. Supan's employment because of her sexual orientation.

51. Ms. Supan's sexual orientation was the motivating factor in Defendant's conduct causing her physical injuries and in its constructive termination of Ms. Supan's employment.

52. Defendant is liable for the acts and omissions of its agents and employees.

53. Defendant Sprouts, by and through its agents, discriminated against Ms. Supan on the basis of her sexual orientation.

54. As a result of Defendant's conduct, Ms. Supan has suffered significant injuries, damages, and losses.

55. Defendant's conduct was engaged in with malice or with reckless indifference to Ms. Supan's rights under CADA.

### THIRD CLAIM FOR RELIEF
### Sex Discrimination (Hostile Work Environment) in Violation of Title VII

56. Plaintiff Supan hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

57. Plaintiff Supan, as a woman who does not conform to gender stereotypes linked to her sex, is a member of the class of persons protected from sex discrimination, including a sexually hostile work environment, within the meaning of Title VII.

58. During her employment with Defendant, Ms. Supan was subjected to severe or pervasive harassment on account of her status as a woman who does not conform to gender stereotypes linked to her sex.

59. Defendant's harassment of Ms. Supan was unwelcome and offensive.

60. That harassment was so severe or pervasive that it altered the conditions of Ms. Supan's employment and created an abusive working environment.

61. Defendant knew or reasonably should have known of the offending conduct and failed to respond in a reasonable manner.

62. Defendant is liable for the acts and omissions of its agents.

63. Defendant Sprouts, by and through its agents, subjected Ms. Supan to a sexually hostile work environment which culminated in Ms. Supan's constructive termination from employment.

64. As a result of Defendant's conduct, Ms. Supan has suffered significant injuries, damages, and losses.

65. Defendant's conduct was engaged in with malice or with reckless indifference to Ms. Supan's rights under Title VII.

### FOURTH CLAIM FOR RELIEF
### Sex Discrimination (Hostile Work Environment) in Violation of CADA

66. Plaintiff Supan hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

67. Plaintiff Supan, as a gay woman, is a member of the class of persons protected from sexual orientation discrimination, including a sexually hostile work environment, within the meaning of CADA.

68. During her employment with Defendant, Ms. Supan was subjected to severe or pervasive harassment on account of her status as a gay woman.

69. Defendant's harassment of Ms. Supan was unwelcome and offensive.

70. That harassment was so severe or pervasive that it altered the conditions of Ms. Supan's employment and created an abusive working environment.

71. Defendant knew or reasonably should have known of the offending conduct and failed to respond in a reasonable manner.

72. Defendant is liable for the acts and omissions of its agents.

73. Defendant Sprouts, by and through its agents, subjected Ms. Supan to a sexually hostile work environment which culminated in Ms. Supan's constructive termination from employment.

74. As a result of Defendant's conduct, Ms. Supan has suffered significant injuries, damages, and losses.

75. Defendant's conduct was engaged in with malice or with reckless indifference to Ms. Supan's rights under CADA.

### FIFTH CLAIM FOR RELIEF
### Retaliation in Violation of Title VII

76. Plaintiff Supan hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

77. Plaintiff Supan opposed Defendant's discriminatory treatment of her as a woman, and/or as a woman who fails to conform to gender stereotypes linked to her sex.

78. After Plaintiff Supan asserted her right to be free from discrimination because of her sex and/or her status as a woman who does not conform to gender stereotypes linked to her sex, Defendant willfully retaliated against her by, *inter alia*, scheduling her for the least desirable and most physically demanding shifts, cutting her hours and therefore, her compensation, and ultimately constructively terminating her employment.

79. Defendant's retaliation against Plaintiff Supan occurred because of and in response to Ms. Supan's protected opposition activity.

80. Defendant is liable for the acts and omissions of its agents.

81. Defendant, either directly or by and through its agents, retaliated against Plaintiff Supan causing her significant injuries, damages and losses.

82. Defendant's conduct was engaged in with malice or with reckless indifference to Plaintiff's rights under Title VII.

### SIXTH CLAIM FOR RELIEF
### Retaliation in Violation of CADA

83. Plaintiff Supan hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

84. Plaintiff Supan opposed Defendant's discriminatory treatment of her as a woman, and/or as a gay woman.

85. After Plaintiff Supan asserted her right to be free from discrimination because of her sex and/or her status as a gay woman, Defendant willfully retaliated against her by, *inter alia*, scheduling her for the least desirable and most physically demanding shifts, cutting her hours and therefore, her compensation, and ultimately constructively terminating her employment.

86. Defendant's retaliation against Plaintiff Supan occurred because of and in response to Ms. Supan's protected opposition activity.

87. Defendant is liable for the acts and omissions of its agents.

88. Defendant, either directly or by and through its agents, retaliated against Plaintiff Supan causing her significant injuries, damages and losses.

89. Defendant's conduct was engaged in with malice or with reckless indifference to Plaintiff's rights under CADA.

### V. RELIEF REQUESTED

WHEREFORE, Ms. Supan respectfully requests that this Court enter judgment in her favor and against Defendant, and award her all relief as allowed by law and equity, including, but not limited to the following:

a. Back pay, in amounts to be determined at trial;

b. Front pay, in lieu of reinstatement;

c. Compensatory and consequential damages, including but not limited to emotional distress damages, in amounts to be determined at trial;

d. Injunctive or equitable relief as appropriate;

e. Attorney's fees and costs, including expert costs, as provided for by law;

f. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

g. Pre- and post-judgment interest at the highest lawful rates; and

h. Such further relief as justice requires or the law allows.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

DATED this 25th day of October, 2018.

Respectfully submitted,

Riley Law, LLC

/s/Kelli Riley
Kelli Riley, CO. Bar # 44828
2017 9th Street
Greeley, CO 80631
Telephone: (970) 515-5932
Facsimile: (970) 797-1226
kelli@rileylawllc.com